IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs April 25, 2012

**DWIGHT RANDY ROWE v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2470     Steve Dozier, Judge**

_____

**No. M2011-01148-CCA-R3-PC**

_____

The Petitioner, Dwight Randy Rowe, pled guilty to sale of a controlled substance in a drug-free school zone and to possession of a weapon during the commission of a dangerous felony. The trial court sentenced him to an effective sentence of eleven years in the Tennessee Department of Correction. The Petitioner filed a petition for post-conviction relief, claiming his trial counsel was ineffective because he incorrectly advised him of parole eligibility and failed to throughly investigate the case or prepare a defense. After an evidentiary hearing, the post-conviction court dismissed the petition. After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., joined. JERRY L. SMITH, J., not participating.

William E. Griffith, Nashville, Tennessee, for the appellant, Dwight Randy Rowe.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A. Guilty Plea Hearing**

1

This case arises from the Petitioner's sale of crack cocaine to a confidential police informant. Based on this conduct, a Davidson County grand jury indicted the Petitioner for sale of under .5 grams of cocaine within 1,000 feet of a school zone, possession with the intent to sell or deliver .5 grams or more of cocaine within 1,000 feet of a school zone, possession of a firearm during the commission of a dangerous felony, felony reckless endangerment, and evading arrest.

At the Petitioner's plea submission hearing, the State offered the following facts as a basis for the Defendant's guilty plea:

[O]n May 19th, 2009, Metro police officers were working with a confidential informant. The confidential informant was given 20 dollars of previously photocopied buy money and went to Lewis Street where the [confidential informant] met up with individuals that included the [Petitioner], Dwight Rowe.

During the confidential informant's interaction with [the Petitioner], the confidential informant purchased a small amount of crack cocaine from [the Petitioner]. The confidential informant then walked away and gave the signal to the police officers. As Metro Police Officers came onto the scene in an effort to conduct the takedown, the [Petitioner] took off running. The [Petitioner] at one point during this, threw an additional bag of crack cocaine that was recovered by the police officers.

He also had in his possession at that time, a loaded handgun. During the course of the takedown, he took the loaded [h]andgun out and attempted to throw it away from his body. But during the course of this action, the gun actually discharged and [the Petitioner] shot himself in the hand. He was taken down and taken into custody, the gun was recovered. The additional crack cocaine was recovered.

And during the time that [the Petitioner] was in the hospital being treated for his wounds and after having been read his rights pursuant to Miranda, the [Petitioner] made statements to the police officers. The statement was recorded and on the tape recorded statement - - I don't believe, [the Petitioner] knew at the time it was being recorded, [the Petitioner] made statements admitting that he had purchased cocaine earlier that day fro [sic] the purpose of selling, for the purpose of making money and that he had purchased the gun as well for the purpose of protection.

All of this occurred here in Davidson County.

After the Petitioner was placed under oath, the trial court inquired as to whether the Petitioner was under the influence of drugs or alcohol or suffered from any mental health problems. The Petitioner responded in the negative. The trial court reviewed with the Petitioner the charges and the potential sentences for each. The Petitioner confirmed that he was "somewhat" satisfied with his attorney's ("Counsel's") representation, and agreed that there was not anything that he had requested of Counsel that Counsel had failed to do. The trial court reviewed the parties' recommended sentence with the Petitioner, and the Petitioner stated that he understood the plea agreement. The Petitioner agreed that he was waiving his right to a trial and his right to appeal from a trial verdict. The Petitioner identified his signature on the guilty plea documents, and he acknowledged that he was freely entering the plea bargain agreement. The Petitioner pled guilty to the charges of sale of controlled substance in a school zone and possession of a weapon during a dangerous felony. The trial court accepted the Petitioner's guilty plea, finding that the plea was "knowingly and voluntarily entered" and that a factual basis existed for the guilty plea. The trial court imposed an eight-year sentence for the sale of a controlled substance in a school zone conviction, to be served consecutively to a three-year sentence for the possession of a weapon during a dangerous felony conviction. The effective sentence was eleven years, to be served at 100%.

## B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel. The post-conviction court held an evidentiary hearing wherein it heard the following evidence: The Petitioner testified that Counsel represented him on these charges in both general sessions court and criminal court. The Petitioner said that, when Counsel met with the Petitioner, he only discussed the State's plea offers and never presented any information as to the Petitioner's charges. The Petitioner said that he repeatedly asked Counsel for the discovery in his cases. When Counsel did not provide discovery to the Petitioner, the Petitioner addressed the trial court about his discovery and the trial court provided the Petitioner with the discovery in his cases. The Petitioner said that he and Counsel never reviewed together or discussed the discovery.

The Petitioner testified that, in general sessions court, he entered an information agreement with the State for a five-year sentence to be served at 30%. Once the cases were transferred to criminal court, the State retracted the offer and instead offered eight years to be served at 30%. The Petitioner said that he declined this offer, explaining that Counsel had explained to him that, if he accepted the new offer, he would serve five

years. The Petitioner said that later, after his guilty plea, he learned that he would have been incarcerated for about two and a half years on the State's offer of an eight-year sentence to be served at 30%. The Petitioner said that, had he known this at the time of the offer, he would not have declined the State's offer. Subsequently, the State offered a twelve-year sentence to be served at 30% and also offered a twelve-year sentence to be served at 35%, both of which the Petitioner declined. The Petitioner said that, during the course of negotiations for a settlement, he believed that Counsel should have been trying to fight the charges rather than focus on plea bargains.

The Petitioner testified that he never received any motions filed by Counsel or attended any court hearings other than the hearing where the Petitioner requested Counsel be relieved from representation.

On cross-examination, the Petitioner agreed that he received the discovery for his cases in November 2009 after requesting it from the Court. The Petitioner said that he was not aware that the State did not provide discovery for his cases until November 2009.

Counsel testified that the general sessions court appointed him to represent the Petitioner. Counsel, at the time of the post-conviction hearing, had been licensed to practice law for twenty-two years. During his career, he had served as a judge and had been in private practice since 2006 with approximately 80% of his practice consisting of criminal defense work. Counsel said that he met with the Petitioner five times while the Petitioner was in jail awaiting disposition of the charges. Counsel recalled telling the Petitioner that the State's evidence was such that the Petitioner would likely be convicted at trial. Counsel said that because the police, through a confidential informant, purchased the drugs from the Petitioner and were present when the Petitioner dropped his gun and it discharged, there was not much of a defense argument.

Counsel testified that he spoke with various members of the Petitioner's family six or eight times during the course of his representation of the Petitioner.

Counsel said that there was a discrepancy between the weight of the drugs as reported by the police and as reported by the Tennessee Bureau of Investigation ("TBI"). Counsel looked into the discrepancy and found that when police initially weigh drugs recovered in the field, they weigh the drugs in the packaging while the TBI does not.

Counsel agreed that he represented the Petitioner when the Petitioner entered the information agreement for a five-year sentence to be served at 30%. The information agreement was later stricken by the State, and Counsel filed a motion to enforce the

4

agreement, arguing that the State should be required to honor its original offer. Counsel said that he believed it was unfair for the offer to be stricken in light of the fact that the Petitioner had no previous arrests and a "clean record." The trial court, however, denied Counsel's motion.

Counsel testified that the State made a second offer that he conveyed to the Petitioner. The Petitioner would not accept the offer and told Counsel he wanted to proceed to trial. Counsel said that he told the Petitioner that he did not think that "was a good idea" because the State's proof against the Petitioner was so strong. Counsel said that he did not specifically recall advising the Petitioner on the length of time he would be incarcerated before being paroled. He explained that he had a parole eligibility chart that he used when discussing offers with clients. The State made several additional offers that the Petitioner declined, maintaining he wanted a trial on his charges.

Counsel said that eventually the Petitioner agreed to plead guilty to eleven years at 100%. Counsel recalled that the Petitioner was "very dissatisfied." At one point in the plea submission hearing, the trial court suggested Counsel step out of the courtroom to discuss again with the Petitioner whether he wanted to plead guilty. Counsel said that he specifically asked the Petitioner if he wanted to plead guilty and the Petitioner responded that he did. Counsel said that the Petitioner never said anything that indicated that the Petitioner did not understand the plea or his decision to enter into a plea agreement.

On cross-examination, Counsel agreed that he had no independent recollection of using the parole eligibility chart in his discussions with the Petitioner, but he maintained that it was his "usual habit."

Based upon this testimony, the post-conviction court denied post-conviction relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it dismissed his petition. The Petitioner argues that Counsel failed to investigate his case and prepare a defense and that Counsel gave the Petitioner incorrect release eligibility information. The State responds that the post-conviction court accredited Counsel's testimony that he advised the Petitioner about the State's overwhelming evidence against him and about the Petitioner's parole eligibility date and, therefore, properly denied the Petitioner post-conviction relief. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her

5

conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House*

6

*v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In its order denying the Petitioner relief on this issue, the post-conviction court made the following findings:

> The Court credits the testimony of trial counsel that he gave the petitioner advice regarding parole. His advice was not a misstatement as the petitioner claims; even if the petitioner's version is accurate, he *could* have to serve five to six years on an eight (8) year sentence. Regardless, the petitioner has not shown that but for the trial counsel's advice he would not

have pled guilty.

. . . .

After reviewing the plea transcript, the Court finds that the petitioner entered into his plea agreement knowingly. The petitioner was not forced to enter the plea and there were no promises made regarding the plea.

. . . .

Based upon the foregoing analysis, the Court is of the opinion the petition for post-conviction relief shall be denied. He has not demonstrated by the requisite standard of clear and convincing evidence that counsel's performance was deficient or that counsel was not acting with the competence required of attorneys in criminal cases, or that he would have determined to go to trial absent the deficient performance. The petition is dismissed.

(Citations omitted).

The evidence in this case does not preponderate against the trial court's findings on this matter. Counsel testified at the post-conviction hearing that he met with the Petitioner in jail five times and spoke with the Petitioner's family members six or eight times. Counsel testified that the State's evidence against the Petitioner was strong. The police bought drugs from the Petitioner through a confidential informant and then observed the Petitioner with the gun during his flight from arrest. Counsel explained that this evidence against the Petitioner made it difficult to create a defense. As to his investigation and preparation of a defense in this case, Counsel said that he noted a discrepancy in the weight of the drugs reported by police and the TBI. Upon further investigation, however, he learned that the methods of weighing the drugs differed and thus accounted for the discrepancy. Counsel acknowledged no independent recollection of using his parole eligibility chart while advising the Petitioner; however, he testified that it is his general practice to use the chart when discussing State offers with his clients. The trial court specifically credited Counsel's testimony in his written order. Accordingly, the evidence in the record does not preponderate against the trial court's finding that Counsel was not deficient.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that

the post-conviction court properly denied post-conviction relief.  Accordingly, we affirm the judgment of the post-conviction court.


_____
ROBERT W. WEDEMEYER, JUDGE